THE MOMI T. TEBO YACHT BASIN CO. v. TWEEDIE. TWEEDIE v.
TEBO YACHT BASIN CO.

(District Court, E. D. New York. June 9, 1919.)

SHIPPING ⊖75—REPAIRS TO VESSEL.

    Contract for repairs to a vessel construed, and *held* not to require libelant for the lump sum named to make all the repairs which were made, but only such as had been specified by the surveyor, which entitled him to extra pay for additional work done with respondent's approval.

In Admiralty. Suit by the Tebo Yacht Basin Company against M. Stanley Tweedie, owner and claimant of schooner Momi T, and cross-libel. Decree for libelant, and cross-libel dismissed.

Crowell & Rouse, of New York City, for Tebo Yacht Basin Co.

Kirlin, Woolsey & Hickox, of New York City, for Tweedie.

CHATFIELD, District Judge. The libelant, Tebo Yacht Basin Company, agreed with the respondent to make, for $13,000, the repairs specified in a survey by one Andrew P. Jensen, under date of September 20, 1918. This agreement was put in writing upon December 23, 1918, and the repairs were to be completed within 21 days after delivery of the boat at the yard. On December 31st, the agreement was changed by mutual consent. The owner of the vessel agreed to re-establish a lien upon the vessel, in addition to a guaranty by the firm to which the freight moneys had been assigned, and obtained, in return, an extension to 30 days from completion, for payment of the amount due. In the same letter an agreement was reached that the total amount of the contract should be increased from $13,000 to $16,000, in order to cover the cost of an entirely new keelson and sister keelson, "or additional work" required on the vessel. In consideration for this last increase of amount the libelant agreed to complete the work and to have her ready for sea not later than January 20, 1919.

It is apparent from the testimony of the witnesses and from this correspondence that up to this time the parties had been contracting with reference to the repairs that each knew of, or which, in the case of the additional contract, were required by the surveyor in order to make the boat first class, and obtain a certificate for her. But an examination of the respondent's letter of December 23, 1918 (Exhibit 3 in evidence), shows that the possibility had entered his mind of obtaining by a general contract repairs which he suspected might exceed in amount those which were contemplated. He says:

    "There are a few things of minor importance not mentioned in Capt. Jensen's survey and recommendation of September 20th, the survey which Capt. Hopcroft handed to you as per copy attached hereto. These few additional things consist of the following: Three new topmasts and one new boom to be furnished and installed and rigged, ship's rigging and sails to be overhauled and repaired or renewed where necessary, some work is to be done in the stern, whatever may be ordered by Capt. Jensen, where the ratholes are, and we want the ship's bottom definitely and thoroughly caulked whether necessary or not, and the ship's bottom topsides and bulwarks and houses properly painted. We understand from Capt. Hopcroft you agree to include this work

⊖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in your tender, and that you agree to do all the work to the satisfaction of Capt. Hopcroft and to the satisfaction and approval of Capt. Jensen and the American Bureau of Shipping, and to comply with all the requirements of Capt. Jensen for the retention of her A-1 class in the American Bureau of Shipping, and that you agree to have the vessel put in thorough and efficient condition in every respect, and ready for sea, including overhauling and repairing or replacing her sails, and that you will do all this work for us at the lowest price you can, but that you guarantee the total cost to us shall not exceed $13,000."

It is evident from the language just quoted that the respondent was seeking to so word the agreement by his counter proposals as to make the libelant liable for any excess, if the cost of the work should exceed $13,000; and yet both parties were agreeing to make specific repairs so as to comply with the surveyor's requirements in order to obtain the rating and first class seaworthy condition desired Mr. Tweedie says there is among the "things of minor importance" some work "to be done in the stern, whatever may be ordered by Capt. Jensen, where the ratholes are." At that time Capt. Jensen had not opened the deck up nor examined the amount of work which would be required in the stern, and apparently none of the parties contemplated that the entire stern would be found to have rotted when the deck was removed. The surveyor, Capt. Jensen, certainly did not intend to limit the repairs which might be needed to those set forth in his survey. He specifies that "the main keelson and sister keelson are rotten in the hatchways"; but in the agreement of December 31st the cost was raised from $13,000 to $16,000, because an entire new keelson and sister keelson and a large amount of additional work had been ordered by the surveyor. It is evident that both parties, when they agreed to do such work as might be required in the stern, where the ratholes were, had in mind repairs of "minor importance." The phrase "some work" would be misleading if used in any other way, when the contract is taken into consideration.

There was therefore no meeting of minds and no contract with respect to the items as to which neither party had knowledge. There was a mistake of fact on the part of each signer of the contract as to the conditions shown when the deck was removed at the stern, in order to get at the matters of "minor importance," where the ratholes were.

To hold otherwise would be to accuse the respondent of bad faith and a deliberate attempt to obtain for nothing work which he readily agreed to pay for when the necessity for this work was discovered and demand made that the contract be changed.

On January 16th the respondent writes:

"I have your favor of even date. I do not agree with your views of the work on the stern. However, neither you nor I are infallible, and each of us is entitled to his own view. But in view of the fact that the knocking off of the work on the vessel would involve huge damages, a necessity I desire to avoid taking, if possible, I have chatted with you over the telephone, and as I understand it the following is mutually agreeable."

Then he agrees to change the contract price to $20,000 and a delivery of the boat was arranged for January 30, 1919. This agreement was substantially complied with. Certain work could not be

completed owing to the presence of dunnage, for which the respondent was responsible, and which necessitated the presence of carpenters on the vessel for a few days after she began loading, but after her delivery on the 30th of January. The making good of such small items after the date of delivery would not be a breach of the covenant to deliver the boat in first-class condition, and there is nothing to indicate that these repairs were not completed by the mutual consent and to the mutual advantage of both parties.

Just before the vessel was delivered to the respondent certain items, such as the furnishing of new fresh water tanks, the repair of certain boiler tubes, the supplying of jaws to a boom and gaff, and other minor details, were called for by the representative of the respondent.

The original repairs were to be made to his satisfaction, but these repairs were not a part of the requirements of the American Bureau of Shipping, and were pure extras not included in any of the original contracts. The testimony shows that the prices with reference to all the work and supplies were reasonable, and there is nothing to indicate that the respondent has objected because of any dissatisfaction either in the work which he received or the price set upon it. His sole ground of contest is based upon his contention that the libelant agreed for a lump sum, and on their own examination of the boat, to do everything which might be required.

But such was not the case. The contract was plainly based upon the representations of the surveyor or of the respondent, and related to repairs for which the need was apparent. The contract did not cover repair of hidden defects, beyond those based upon the respondent's own representations, where no examination was made, and where reliance upon his representations is apparent.

The respondent has brought a cross-libel, alleging damages for delays in delivery of the boat; but no delay has been shown from which damage resulted, other than that necessary delay incurred by the making of the repairs covered by the contract.

If the libelant's claims are upheld, then the cause of action for delay must fall.

The libelant may have a decree for the amounts claimed by him, and the cross-libel for delay will be dismissed.